JOHN WILDER, EXECUTOR OF OLIVER ALDRICH V. JAMES ALDRICH, EXECUTOR OF ASINATH ALDRICH.

Assumpsit for money had and received will not lie for the value of goods and chattels wrongfully detained from their owner, unless they have been sold and the money received for them.

Shares in the capital stock of a bank, purchased during coverture, in the name of the wife, with the proceeds of property or choses in action belonging to her, vest in the wife, and will not go to the executor of the husband upon his decease.

A negotiable promissory note, taken payable to the husband and wife during coverture, is a chose in action, to which, if taken with the assent of the husband, the wife becomes solely entitled by survivorship, upon the death of the husband, as against his executor.

THIS was assumpsit for money had and received. The jury trial was waived, and the case submitted to the Court upon the evidence, from which it appeared that one Job Steere, who died in 1837, bequeathed his personal estate to his widow, Desire Steere. This personal estate consisted, among other property, of certain promissory notes payable to the said Job Steere. Desire Steere, the widow, died in 1841, intestate, the said promissory notes never having been collected and reduced to money, leaving her estate to her only child, Asinath Aldrich, the testator of the defendant, and then the wife of Oliver Aldrich, the testator of the plaintiff. These promissory notes were delivered over to Mrs. Aldrich and her husband, as a portion of the estate to which she was entitled as distributee. Oliver Aldrich and his wife then, instead of collecting the moneys due upon the notes, consented

to exchange them with the makers for their notes, payable to himself and wife, or order, saying, at the time of this substitution, that the money belonged to his wife, and that he had taken the notes in their joint names, that if any thing happened, there would be no difficulty in their collection. In one or two instances they received part payment, some $300, and took a new note to both for the balance. Payments were also made upon those substituted notes in the lifetime of Oliver Aldrich. These notes were always kept by the wife, and the moneys received upon them paid to her, and in some instances loaned by her upon like notes, with the assent of her husband.

In January and April of 1847, Mrs. Aldrich, with the moneys received upon these notes, purchased forty shares in the capital stock of the Bank of North America, also with the assent of her husband, and some of the notes were collected for this purpose, the makers having been informed by Mr. Aldrich, when they were given, that they must be paid on a day certain, as his wife wished the money, to purchase stock with it.

Mrs. Aldrich also, on the the death of her husband, retained in her possession certain articles of household furniture and silver ware of the value of about $129, which she refused to deliver up to her husband's executor on demand made by him therefor.

The plaintiff, the executor of Oliver Aldrich, claimed in this action to recover of the defendant, the executor of Mrs. Aldrich, the value of the goods by her so retained, the amount of moneys received by her in the lifetime of her husband upon the original promissory notes, payable to Job Steere, and upon the substituted notes payable to her husband and herself, and also the money by her re-

ceived after the death of her husband, upon the substituted notes made by her husband and herself.

*Potter*, for the plaintiff, contended.

A married woman's distributive share in the estate of an intestate vests absolutely in her husband, for though the administrator has the right to collect the claims and reduce the estate to money, yet the moment this is done, not only is the husband entitled to the money, but his title relates back to the death of the intestate. *Tucker* v. *Gordon*, (5 New Hamp. 564.) *Griswold* v. *Penniman*, (2 Conn. 564.) *Barlow* v. *Bishop*, (1 East, 432.) *Hearne* v. *Kevan*, (2 Iredell, 34.) *Chace* v. *Palmer*, (25 Maine, 341.) *Crosby* v. *Otis*, (32 Maine, 256.) *Palmer* v. *Trevor*, (1 Verm. 261.) A negotiable promissory note, made payable to a married woman during coverture, is, in legal effect, payable to her husband. His title is perfect without a suit; so that his endorsement transfers a perfect title to the endorsee, an effect which it could not have if his title were not absolute, unless upon the absurd ground that the very act which divests him of all title, perfects a title in him. The endorsement of the wife, on the other hand, is inoperative, which would not be the case unless the title were already in the husband. If the note were made to "the wife or bearer," not even an endorsement is necessary to pass the title, and if the husband should die, his wife surviving, his administrator could collect the note. Would he be liable to the wife for the amount? If not on such a note, how does a note payable to "the wife or order," differ from it in legal effect? Such a note is not a chose in action, in the ordinary sense of the word, but a chattel personal. Its *negotiability* takes it out of the ordinary rule in regard to

choses in action. *Shuttlesworth* v. *Noyes*, (8 Mass. 229.) *Washburn* v. *Hale*, (10 Pick. 432.) *Pierce* v. *Thompson*, (17 Pick. 173.) *McNeilage* v. *Holloway*, (1 B. & A. 218.) *Rawlinson* v. *Stone.* (3 Wils. 1.) *Savage* v. *King*, (17 Maine, 301.) *Commonwealth* v. *Manley*, (12 Pick. 173.) *Carey* v. *Taylor*, (2 Verm. 302.) *Lemon* v. *Thompson*, (1 Penn. 482.)

In this case the property never was in Mrs. Aldrich, either before or during coverture. The right of action upon debts due to Job Steere, upon his death vested in his administrator, and no right accrued to Mrs. Aldrich, upon which she could have sued, even if she had been unmarried, and, therefore, no right to which she was entitled by survivorship upon the death of her husband. How, then, can any question as to her choses in action arise in this case ? Not having the property, nor the right to sue for it in her own name ; when these notes were taken by the husband and wife jointly, if this act did not reduce the property in the notes to the husband's possession, at least the utmost effect that can be claimed for it, was to make her a co-promissee with him by his assent, which would only entitle her to half the proceeds. Besides, if it be law that a note taken to the wife alone would survive to her upon her husband's death, it does not follow that the same effect should be given to a note taken to the husband and wife jointly.

But, if these notes are not chattels personal, and so absolutely vested in the husband, yet, as rights of action, they are as much his as the wife's, and it must be shown how his right can be divested and become vested in the wife, before she can retain the whole. If the consideration had moved from the husband, she would not be entitled by survivorship against his administrator, and, cer-

tainly, not against creditors, if the estate were insolvent.
Yet a right growing out of the relation of husband and
wife is not affected by the solvency or insolvency of the
husband's estate. And, admitting that the property of
the wife formed the consideration of these notes, yet the
husband could make it his, and if he could make all of it
his, he could a part. The notes being taken in their
joint names, if it does not evidence an intent to reduce
the whole of the property to possession, at least manifests
an intent to reduce half; and, upon such notes, she could
only sue as surviving co-promisee, and this would entitle
her to only half the proceeds.

*Ames* and *Carpenter*, for the defendant, contended,
that there was no doubt that choses in action, belonging
to the wife, and not reduced to possession during covert-
ure, survived to her upon the death of her husband. The
question had been much mooted as to what was a reduc-
tion into possession, and in later times the Court had
constantly leaned more and more in favor of the rights of
the wife. At one time in England a negotiable promis-
sory note occupied a middle position between choses in
action and personal chattels, and it was held, that, upon
marriage, such notes payable to the wife vested imme-
diately in her husband. But this doctrine has been long
overruled by the Court sitting in Bank. *Richards* v.
*Richards*, (22 E. C. L. Rep. 122.) *Gale* v. *Madley*, (6
M. & W. 423.) *Sherrington* v. *Yates*, (12 M. & W.
853.) It is true the wife cannot during coverture transfer
the note, but her disability results from coverture, and is
no test to ascertain whether or not the note has been re-
duced to possession. In this country the distinction was
never recognized except in *Shuttlesworth* v. *Noyes*, (8

Mass. 229,) which was soon afterwards overruled. *Draper* v. *Jackson*, (16 Mass. 480.) *Phelps* v. *Phelps*, (20 Pick. 506.) *Stanwood* v. *Stanwood*, (17 Mass. 57.) *Foster* v. *Fifield*, (20 Pick. 67.) *Hayward* v. *Hayward*, (20 Pick. 517.) *Adams* v. *Bracket*, (5 Met. 280.) The rule, as now established, is, that there is no difference in regard to survivorship between promissory notes and other choses in action, whether taken before or after marriage, and whether taken to the wife alone or to her jointly with her husband. Where the wife is the meritorious cause, a promissory note made payable to her will be looked upon as a post-nuptial settlement, and cannot be questioned except by creditors. The result of the cases is, that nothing short of a collection or a recovery by judgment by the husband in his own name or jointly with his wife, and the award of an execution in his favor, will be looked upon as a reduction of the chose to his possession. (2 Atk. 20. 726 ; 2 Ves. 675 ; 6 Johns. Ch. R. 132 ; 2 Kent. 137. 142 ; 2 Eng. Cond. Ch. R. 364 ; 2 Story Eq. Jur. § 1411, 1412, note 3 ; 4 Ver. 17 ; 2 Ball. & R. 424 ; 2 S. & R. 491 ; 1 R. I. R. 178 ; 2 Piere Wms. 496 ; 16 Mass. 480 ; 12 Ves. 501, 16 Ves. 418 ; 2 Hill. Ch. R. 644 ; 9 Paige, 283 ; 13 Eng. Cond. Ch. R. 283 ; 8 Ves. 206 ; 1 Jacobs & W. 472 ; 1 Rawle, 279 ; 5 Ves. 515 ; 2 Hemming & Mumford, 381.)

BRAYTON, J. delivered the opinion of the Court.

In so far as relates to the goods and chattels retained by the widow against the demands of the husband's executor, the plaintiff has failed to offer such proof as would warrant a judgment in assumpsit for the value of those goods. The refusal to deliver would be evidence of a conversion which might enable a party to recover in tro-

ver; but, to recover in assumpsit, it is necessary to prove that the goods have been sold and the money received therefor.

As to the moneys claimed by the plaintiff in this suit, it is necessary, in order to warrant a recovery, for him to prove either that the wife, on the death of the husband, had moneys in possession, which she retains from her husband's executor, or that she has since received moneys belonging to his estate. Whatever moneys came to her possession during coverture vested in the husband, and, on his death, if remaining, became assets in the hands of the executor. So, also, whoever (and it makes no difference whether it be the widow or other person) receive money belonging to the estate, becomes accountable to the executor for the amount, so received.

There were certain sums of money received in the lifetime of Oliver Aldrich, the husband, both upon the original notes made to Job Steere, and upon the substituted notes payable to Aldrich and his wife. These sums, upon the receipt thereof, ceased to be in action, and might fall within the description of chattels personal, of which cash in hand is an instance. So much may have been reduced to possession, and it is immaterial, for this purpose, whether received by the husband or the wife. Had this money remained in the hands of the wife at the decease of her husband, it must have been held to be a portion of his personal estate, and have gone to his executor. And had the widow retained it in her possession against the claims of the executor, she would have been retaining it without right, and the executor might have maintained his action therefor, as for money had and received.

The evidence, however, shows that she retained none of these sums. All the money, which the facts in the

case show to have been retained, and even much more than the sums received would amount to, it appears, was invested in stock, to the amount of forty shares, in the Bank of North America, the par value of which is two thousand dollars. This was done with the assent and concurrence of Oliver Aldrich, and in his lifetime. It was by his authority, that all the money was laid out in this stock, purchased in her name, and with the intent that it should be secured to her.

She was vested with the property of another species of chose in action, which her husband, but for the act, entitled " An act concerning the property of married women." might, during the coverture, have reduced to possession, had he chosen so to do, and thereby still have defeated her right of survivorship, for he was not concluded by his assent. He has not done so, and, so far as this money is concerned, it is quite immaterial whether he did or not.

Upon the authority of *Adams & Others* v. *Bracket*, (5 Met. 280,) by clear and deliberate acts, Oliver Aldrich divested himself of this money and of all right to it as money, and exchanged it for this stock, vested in the wife. It is not necessary to determine, whether the purchase of this stock would fall within the description of a voluntary gift, and so void as to creditors, or whether, having been purchased with funds originally belonging to the wife, it might be maintained against them, as is intimated by the case of *Poor* v. *Hazleton*, (15 N. H. 569.). In *Adams & Others* v. *Bracket*, such purchase was supported against the executor, and the judgment rests as well upon sound principle as upon the weight of authority. In that case the purchase was made with the moneys of the husband. In this case they came originally

by the wife, and had been carefully saved for this purpose.

But, perhaps, it is not necessary to consider whether these stocks can be held by her against even a volunteer. It may be sufficient that the moneys were, by his agreement, converted into stocks in his lifetime, and ceased to be moneys in hand, and it might be quite immaterial in whom the stocks vested. In either view of the matter we can, upon no principle, hold that she is now retaining these moneys, which, as his agent, and by his assent, she paid away.

As to the moneys, shown to have been received by the widow after the death of the husband, if they were moneys properly belonging to his estate, her executor is no doubt liable to account for these. If, on the other hand, they were properly hers, her executor is not liable to any suit.

These moneys were received upon the promissory notes taken during the coverture in the name of Oliver Aldrich and herself jointly, and which remained unpaid at his decease. The question is, whether she rightfully received the moneys upon these notes,—whether those notes were hers or were assets, properly belonging to the estate of her husband.

The counsel for the defendant claims that, being choses in action and payable jointly to husband and wife, by law they survived to her upon the death of her husband, and became solely hers, and she was entitled to receive the money thereon to her own use.

The general rules of law, which regulate the rights of property, as between husband and wife, are well settled. All moveable chattels, in possession at the time of mar-

riage, and such as come to the wife in possession during coverture, vest immediately and wholly in the husband, and cash in hand is given as an instance of this.

And it is well settled, also, that the choses in action of the wife do not vest in the husband absolutely, by the marriage. The marriage does not of itself change the property in them from the wife to the husband. The husband nevertheless acquires certain rights and powers over them. He may sell and transfer them. He may collect the debts, notes, and bills, or may release them, without the assent of his wife and against her will, and thereby defeat her right. He has the power to collect them with or without suit, and, if he does so, they become his. Until they are reduced to possession by some act of his, they are not his. These are his powers, but, unless exercised, the property is not changed, and, though the wife can do no act in relation to them whatever, her inability to do so does not affect her right of property. So that the marriage gives the husband not the right of property, but vests him with the power only of making it his by the exercise of certain acts.

It may not be necessary, in the view which we have taken of this case, to consider one of the points raised in the argument, viz. ; whether the distributive share of the estate of Desire Steere was a chose in action, which would survive the wife of Oliver Aldrich, unless reduced to possession by him, though we consider the case of *Phelps* v. *Phelps*, (20 Pick. 506,) conclusively settles the point that it was. This case we think rests as well upon principle as upon the weight of authority. Neither does the case necessarily require us to decide, whether the substitution of the notes, payable to Oliver Aldrich and wife, for the notes payable to Job Steere, was in law

a reduction to possession of the distributive share, to which Mrs. Aldrich became entitled from her mother's estate. The mere substitution of one security for another, very clearly, would not have that effect. Taking new security to the husband alone, on the contrary, might.

But a more material question is, did any right vest in the wife by the taking of these notes payable to her husband and herself jointly? Did the promise, contained in them, enure to her? Does a promissory note, made to the wife during coverture, vest any interest in her, or does it enure absolutely and wholly to the husband? If it vest in her any interest, it would seem to follow that it vests with it the right of survivorship, and falls within the rules of law applicable to her choses in action generally, as before stated.

We are not embarrassed with any question, as to whether it had been reduced to possession, since it is quite clear that no act was done in relation to these notes, which, by any decided case, can be construed into a reduction to possession. The husband, after the taking of these notes, did no such act. He neither collected them, released them, negotiated them, brought any suit, nor did he so much as express any dissent, but, on the contrary, took them himself expressly to secure the money to his wife. If by law, therefore, they could survive, there was no act of his to defeat that right of survivorship. And we have the question, whether these promissory notes vested any right in the wife.

The plaintiff's counsel claims that they do not, and that a promissory note, made to a married woman during coverture, is in legal effect payable to the husband alone, if it be negotiable, and he makes this distinction between

notes negotiable and those not so.   He claims that a ne-
gotiable note is a chattel personal and not a chose in
action.

The case of *McNeilage* v. *Halloway*, (1 B. & Ald.
218,) cited by him, is to that point.   That was a note
made to the wife *dum sola*, and it was held that the hus-
band might sue in his own name alone, on the ground
that he could endorse in his own name and thereby en-
able the assignee to sue in his, the assignee's name.

The case of *Barlow* v. *Bishop*, (1 East. 432,) was
also cited by him, in which it was held, that a pro-
missory note given to the wife during coverture, could not
be endorsed by her, and Lord Kenyon said, in that case,
it enured as a promise to the husband alone.

That a promissory note is a chose in action there can
be no doubt.   It falls within the description of such in-
terest, in the elementary books, and has been so held, in
all cases and for all other purposes.   That, being made
to the wife during coverture, it does vest an interest in
her, is sustained by many authorities.   In *Nash* v. *Nash*,
(2 Mad. 133,) where it did not appear that the husband
had expressly assented, it was held that the right vested
in her and survived.   In *Richards* v. *Richards*, (2 B. &
Ad. 447,) there was a note made by the husband him-
self jointly with others, yet the Court held that it vested
a right in the wife, which would survive, and she was al-
lowed to recover, after the death of her husband, against
the surviving promissors.   In *Gaters* v. *Madely*, (6 M. &
W. 422,) it was held that a note, made to the wife dur-
ing coverture, vested in her, and in that case there was no
evidence of assent on the part of the husband.

In the last two cases, the case of *McNeilage* v. *Hal-*
*loway* is referred to, but not recognized as law, and the

Court, in both these cases, determine that a promissory note is a chose in action, and assume that, if so, it survives, and that its being assignable is no objection, and does not alter its character as such.

In *Phelps* v. *Phelps*, (20 Pick. 506,) it is said that the doctrine that a feme covert has no civil capacity, must be taken with many qualifications, and that, although she cannot act separate from her husband, yet, with his consent, she may become party or grantee in a deed, obligee in a bond, or payee in a promissory note. This may be done either jointly with him or alone and, in either case, the right vests and will survive. *Adams & others* v. *Bracket*, before referred to, was not the case of a note, but of bank stock in the name of the wife, and, upon this principle, it was held that it vested in her and survived. In a late case, *Poor* v. *Hazleton*, (15 New Hamp. 564,) it was held that a promissory note, made to the wife during coverture, in consideration of the release of her interest in her father's estate, vested an interest in the wife, which would survive, and the Court intimated, that it would do so even against creditors.

The result of the cases leaves no reasonable doubt that, at least, if the husband assent, the right vests and survives, and the cases would lead to the further conclusion, that the assent will be presumed, unless he dissent and claim the benefit, and it might be a serious question, if anything will be evidence of such dissent, other than such as would amount to a reduction to possession. As to promissory notes, not assignable, they may clearly vest, and are, for these purposes as well as for all others, choses in action and will survive.

Can it make any difference that the note is negotiable, especially in a case where the assent of the husband is

expressed ?   Except upon the authority of McNeilage v. Halloway, it cannot be maintained.   It may be observed of that case, that the promissory note there was given to the wife before marriage and had vested.   If the Court mean to say that it was not, before the marriage, a chose in action, then their decision is counter to the settled laws upon the subject.   It is presumed, that they did not so intend.   If not, then in effect the case decides that by the marriage, its character was changed from a chose in action to a personal chattel, and, upon the ground that it was assignable and by his sole act he might have passed the property in it to the assignee, without joining the wife, and one of the Judges held, that, whenever the husband has this power over any of the wife's property, that property is a chattel personal and vests in him absolutely.

Now, as a general proposition this is not sustainable. He has this power over stocks standing in her name, and yet, confessedly, the property is not changed without the exercise of his power of disposition.

It may be observed, also, that this suit was brought during coverture, and, it is intimated, that the bringing of the suit is evidence of an intent to make it his.   In the case before us there has been no suit.

It is said, that the power to negotiate presupposes the sole property to be in the husband.   Such supposition is not at all necessary, because he has power to release any debt or security of his wife, not assignable, and that, whether accruing before or during coverture, which requires the same power, but presupposes no such sole interest.   The disability of the wife to endorse or collect a negotiable note stands on no other footing, than it does

in relation to those not negotiable, and cannot affect this question. And the power of the husband to negotiate, is the same over notes given before, as after marriage. And it is difficult to see any such substantial distinction, as should change the character of the note from a chose in action to a chattel personal, and, we are of opinion, that it is not so changed in point of law by the marriage as to prevent its vesting in the wife, during coverture, and surviving, as in all other cases of such vested interests.

If the right survives, as we hold it does, still the counsel claims that, on the death of the husband, she did not become solely entitled to the contents, but had only a several interest, and that one half the proceeds should belong to the husband's estate. This assumes that she is not a joint promisee. We think she is. This was the interest which she took originally and is that which survived and entitled her to use all the rights of survivorship, in the same manner, as if she had been all the while a feme sole, and it matters not who the co-promisee was, whether her husband or a stranger.